E-FILED
Wednesday, 09 November, 2011  07:54:35 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DISMISSED REALTOR, and THE STATE OF ILLINOIS ex rel. DISMISSED REALTOR<br><br>Plaintiffs,<br><br>v.<br><br>ALEXANDER VEYTSMAN, NATALIYA GORENYUK, DIMITRIY BREKHER, and ALEXANDER BERNSHTEYN, individually, and MEDICAL CONSULTING AND SALES, INC., an Illinois corporation, also known as MCS MEDICAL TRANSPORTATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 11-3281<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED COMPLAINT**

The United States of America ("United States") and the State of Illinois allege the following:

**Nature of the Case**

1.      This action is brought under the False Claims Act, 31 U.S.C. §3729 et seq., and the Illinois False Claims Act (formerly known as the Illinois Whistleblower Reward and Protection Act), 740 ILCS 175/1, et seq., and under common law theories of payment by mistake of fact and unjust enrichment.

2.      The United States and the State of Illinois allege that the defendants conspired to and did fraudulently submit claims in order to obtain from the Illinois Medicaid program thousands of dollars for non-emergency transportation services as a result of fraudulent representations.

3.      The fraudulent schemes included:

a.    The knowing submission of claims for services already paid;

b.    The knowing submission of claims for services not provided; and

c.    The knowing submission of claims for services without a corresponding

medical service.

### The Parties

4.    The plaintiffs are the United States of America and the State of Illinois acting on

behalf of the Illinois Medical Assistance Program ("Medicaid") under Title XIX of the Social

Security Act, who was the victim of a conspiracy and scheme and artifice to defraud the United

States or any agency thereof.

5.    At all times relevant to this Complaint, Medical Consulting and Sales, Inc., an

Illinois corporation, also known as MCS Medical Transportation, ("MCS") was a corporation

formed on or about April 24, 1998 under Illinois law, and doing business at 276 Larkspur Drive,

Highland Park, Illinois and elsewhere.

6.    Defendant Alexander Veytsman ("Veytsman") was a 50% shareholder and

President of MCS from at least January 2, 2001 to July 21, 2003.   Veytsman is charged only with

conduct that occurred between these dates.

7.    Defendant Nataliya Gorenyuk ("Gorenyuk") was a 50% shareholder of MCS from

at least January 2, 2001 to June 25, 2007.   Gorenyuk is charged only with conduct that occurred

between these dates.

8.    Defendant Gorenyuk was President and Treasurer of MCS from July 21, 2003 to

April 9, 2007.

9.    Defendant Dimitriy Brekher ("Brekher") was a 50% shareholder and Vice

President from July 21, 2003 to the present.   Brekher is charged only with conduct that occurred

on or after July 21, 2003.

10.     Defendant Alexander Bernshteyn ("Bernshteyn") was a 50% shareholder from June 25, 2007 to the present.   Bernshteyn is charged only with conduct that occurred on or after June 25, 2007. (Defendants Alexander Veytsman, Nataliya Gorenyuk, Dimitriy Brekher, Alexander Bernshteyn, and Medical Consulting and Sales, an Illinois corporation, also known as MCS Medical Transportation, will be referred to jointly herein as "the Defendants".)

11.     At all times relevant to this complaint MCS was a participating provider with the Medicaid program, assigned provider number 36-4301812-003.

12.     The Defendants, through MCS, provided medical transportation services to indigent persons eligible to receive medical assistance through the Illinois Medicaid program.

### Jurisdiction and Venue

13.     This action arises under 28 U.S.C. §1345 with the United States as a plaintiff and 31 U.S.C. §3729 under the False Claims Act.

14.     Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) and 31 U.S.C. §3732(a) because a substantial part of the events giving rise to the claim occurred in this district and a substantial part of the property that is the subject of the action was situated in this district.

15.     Pursuant to 28 U.S.C. §1367, this Court may exercise supplemental jurisdiction over the claims brought by the State of Illinois under the Whistleblower Reward and Protection Act.

### Background

16.     From at least January 2, 2001, the Defendants knowingly participated in various schemes and artifices and conspiracies to defraud and to obtain money from the United States and

others by means of false and fraudulent claims and statements, conspired to defraud the United States and others by submitting or causing to be submitted by the use of the mails and wires, false and fraudulent claims and statements, and directly and indirectly received the benefit of such schemes.

17.     Medicaid provides coverage for a wide array of necessary medical services for the poor and disadvantaged.   42 U.S.C. §§1396, 1396d-(a), et seq. (Title XIX, Social Security Act); 305 ILCS 5/5-1, et seq.; 89 Ill. Admin. Code pt. 140, et seq.

18.     Since 1965, the Social Security Act, Title XIX has funded Medicaid. The primary purpose of the Medicaid Act was to provide access to and improvement of the quality of medical care for indigent individuals.

19.     While participation in Medicaid is not required, a State choosing to participate in Medicaid must devise a State Plan for medical assistance according to federal guidelines and receive approval of the Plan from the United States Department of Health and Human Services ("HHS").   42 U.S.C. §1396.   42 C.F.R. §430.10.

20.     Illinois participates in Medicaid and as such, is eligible to receive federal funds under the program. Federal financial participation in the Medicaid program for the reimbursement of expenditures is based upon a formula that assigns reimbursement percentages to the Federal and State government.   The formula yielded an approximate split of 50% federal and 50% state money for Illinois.

21.     All claims to the Illinois Medicaid program are submitted to, processed in, and paid from Springfield, Illinois.

22.     Medicaid reimburses providers for a multitude of health care services including, under certain conditions, non-emergency transportation of a Medicaid beneficiary.   42 U.S.C.

§1396d(a)(1)-(21).

23.    Payment for medical transportation is made to individuals, public, private, or not for profit transportation carriers, whose operators 1) are properly licensed, 2) provide the appropriate form of transportation, and 3) bill and receive payments from the general public and other third party payors. 89 Ill. Admin. Code 140.490(a) (2006).

24.    The Illinois Medicaid program pays for non-emergency medical transportation when transportation is "provided for an eligible recipient to or from a source of medical care." 89 Ill. Admin. Code 140.490(b) (2006).

25.    "Medical care is defined as any medically necessary service covered under the Medical Assistance Program." 89 Ill. Admin. Code 140.490(b) (2006).

26.    In Illinois, the Medicaid Program is administered by the Department of Healthcare and Family Services ("HFS").

27.    HFS enters into provider agreements with individual and institutional health care providers who wish to serve Medicaid-eligible patients in accordance with regulations promulgated by HFS.

28.    HFS enters into provider agreements with non-emergency transportation providers for the purpose of providing transportation for its members to and from covered healthcare services.

29.    On January 2, 2001, Veytsman and Gorenyuk, on behalf of MCS, agreed to the following:

> The Provider agrees to be fully liable for the truth, accuracy and completeness of all claims submitted electronically or hard copy to the Department for payment.   Furthermore, the provider agrees to review, affix an original signature, and retain in their files the Billing Certification

which is the last page of the Remittance Advice.   Any submittals of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.

30.     On November 1, 2001, Veytsman, on behalf of MCS, agreed to the following:

The Provider agrees to be fully liable for the truth, accuracy and completeness of all claims submitted electronically or hard copy to the Department for payment.   Furthermore, the provider agrees to review, affix an original signature, and retain in their files the Billing Certification which is the last page of the Remittance Advice.   Any submittals of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.

31.     On July 22, 2003, Gorenyuk, on behalf of MCS, agreed to the following:

The Provider agrees to be fully liable for the truth, accuracy and completeness of all claims submitted electronically or hard copy to the Department for payment.   Furthermore, the provider agrees to review, affix an original signature, and retain in their files the Billing Certification which is the last page of the Remittance Advice.   Any submittals of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.

32.     On October 25, 2005, Brekher, on behalf of MCS, further agreed to the following:

The Provider agrees to be fully liable for the truth, accuracy and completeness of all claims submitted electronically or on hard copy to the Department for payment. Provider acknowledges that it understands the laws and handbook provisions regarding transportation services and certifies that the services will be provided in compliance with such laws and handbook provisions. Provider further acknowledges that compliance with such laws and handbook provisions is a condition of payment for all claims submitted. Any submittal of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws.

33.     Transportation providers enrolled with HFS must submit charges for transportation

services to HFS. HANDBOOK FOR PROVIDERS OF TRANSPORTATION SERVICES, Chapter T-200, Policy and Procedures for Transportation Services, § T-202.3.

34.    HFS requires transportation providers to submit their claims for reimbursement on claims forms specifically designed for transportation services.   The provider may submit the claim in written form or by submitting it electronically.   The claim form, called a Transportation Invoice, along with the Transportation Handbook, requires transportation providers to include the following information, among other information, for all non-emergency transportation claims: 1) Provider Name, 2) Provider Number, 3) Billing Date, 4) Recipient Name, 5) Recipient identification Number, 6) Vehicle License Number for vehicle used, 7) Date of Service, 8) Category of Service, 9) Approved Procedure Code, 10) Prior Approval Number, 11) Origin Time of trip, 12) Destination Time that trip ended, 13) Total Loaded Miles for one-way trip, 14) Provider Charge; 15) Origin Place by code, 16) Origin Address and City; 17) Destination Place by code, 18) Destination Address and City, and 19) Signature of Provider certifying the validity of the information in the claim.

35.    Charges must be coded with specific procedure codes. HANDBOOK FOR PROVIDERS OF TRANSPORTATION SERVICES, Chapter T-200, Policy and Procedures for Transportation Services, § T-202.3.

36.    Specific procedure codes and specific reimbursement rates are assigned for each type of transportation provider and each type of service. HANDBOOK FOR PROVIDERS OF TRANSPORTATION SERVICES, Chapter T -200, Policy and Procedures for Transportation Services, § T-202.3.

37.    For each written transportation claim submitted, the provider, including the Defendants, certifies that "all entries on this claim are true, accurate, and complete."   The

7

provider further certifies that "records necessary to fully disclose the nature and extent of services

provided are maintained and will be made available upon request of State and Federal officials."

Finally, signature by the provider acknowledges that "I understand payment is made from State

and Federal funds and that any falsification or concealment of material fact may lead to

appropriate legal action."

38.     Similarly, the provider must certify the accuracy of electronically submitted claims.

Upon receipt of a remittance advice, which is designed to document all claims submitted for

payment, the provider is required to make the following certification:

> I acknowledge that I am familiar with pertinent Healthcare and Family
> Services policies and procedures as set forth in the Illinois Medical
> Assistance Program Handbook.   With that knowledge, I certify that: the
> billing information listed on the remittance advice (voucher) identified
> below is true, accurate and complete; the services as described on the
> remittance advice were provided; I will keep and make available such
> records as are necessary to disclose fully the nature and extent of the
> services provided; and I understand payment is made from State and
> Federal funds and any falsification or concealment of a material fact may be
> cause for prosecution or other appropriate legal action.

### Duplicate Claims

39.     HFS authorizes payment to transportation providers for qualified services actually

provided.   A provider may be reimbursed only one time for each service, and successive

payments for the same service are not authorized.

40.     Defendants knowingly presented to HFS multiple claims for the same purported

transportation service, without regard for whether that particular service had been paid by HFS

previously.

41.     For example, on or about February 26, 2007, the Defendants submitted a claim for

purportedly transporting Medicaid recipient L.F. on February 26, 2007, billing Medicaid for transportation to and from a particular location.

42.     Upon receiving this claim from the Defendants, HFS, on March 2, 2007, authorized payment to the Defendants in the amount of $16.46, which represented a round trip paid at $8.23 each way.

43.     On or about March 8, 2007, the Defendants submitted another claim for the same transportation of Medicaid recipient L.F. on February 26, 2007, thereby resulting in a second payment for the same purported service.

44.     HFS paid $16.46 for the successive claim.

45.     Attachment A to this complaint lists the name of the recipient (redacted to initials for public filing), the recipient's Medicaid number (redacted for public filing), and the date of service for each false, successive claim submitted by the Defendants, along with a corresponding number for reference purposes.

46.     The false claim described in the prior paragraphs is Reference Number 723 on Attachment A.

47.     The Defendants submitted approximately 3,125 false claims for purported transportation services for which they had already been paid by Medicaid.

**Billing for Services Not Provided**

48.     A provider may only bill for services actually provided.

49.     All non-emergency medical transportation requires a corresponding covered medical service.

50.     HFS authorizes payment for non-emergency transportation to or from a covered source of medically necessary care, provided a cost-free mode of transportation is unavailable or

inappropriate.

51.     The Defendants have knowingly presented to HFS claims for non-emergency transportation services where the passenger Medicaid recipient has no corresponding covered medical service.

52.     For example, on or about December 23, 2005, the Defendants submitted a claim for purportedly transporting Medicaid recipient A.E. on December 19, 2005, billing Medicaid for transportation to and from a particular location.

53.     The Defendants, or anyone on their behalf, did not transport Medicaid recipient A.E. on December 19, 2005 because Medicaid recipient A.E. was hospitalized at that time.

54.     Attachment B to this complaint lists the name of the recipient (redacted to initials for public filing), the recipient's Medicaid number (redacted for public filing), and the date of service for each false claim submitted by the Defendants for a purported transportation service at a time when the Medicaid recipient was hospitalized, along with a corresponding number for reference purposes.

55.     The false claim described in the prior paragraphs is Reference Number 17 on Attachment B.

56.     The Defendants submitted approximately 86 false claims for purported transportation services on dates for which the Medicaid recipient was hospitalized.

57.     As another example, on or about July 23, 2009, the Defendants submitted a claim for purportedly transporting Medicaid recipient L.B. on July 14, 2009, billing Medicaid for transportation to and from a particular location.

58.     Medicaid recipient L.B. received no corresponding medically necessary care from a covered entity on July 14, 2009.

10

59.     Attachment C to this complaint lists the name of the recipient (redacted to initials for public filing), the recipient's Medicaid number (redacted for public filing), and the date of service for each false claim submitted by the Defendants for a purported transportation service on a date for which the Medicaid recipient received no corresponding medically necessary care from a covered entity, along with a corresponding number for reference purposes.

60.     The false claim described in the prior paragraphs is Reference Number 135 on Attachment C.

61.     The Defendants submitted approximately 4,014 false claims for purported transportation services on dates for which the Medicaid recipient received no corresponding medically necessary care from a covered entity.

### COUNT I
### FALSE CLAIMS ACT (31 U.S.C. § 3729(a))
### False Claims

62.     Paragraphs 1 through 61 are realleged as through fully set forth herein.

63.     From at least January 2, 2001 through the present, Defendants knowingly presented, or caused to be presented, to an officer, employee or agent of the United States false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

64.     From at least January 2, 2001 through the present, Defendants knowingly made, used or caused to be made or used false records and statements to get false or fraudulent claims paid or approved by the Government in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

65.     As used herein, the word "knowingly" means that a person, with respect to information (a) has actual knowledge of the information, (b) acts in deliberate ignorance of the

truth or falsity of information, or (c) acts in reckless disregard of the truth or falsity of the information.

66.     Because of Defendants' acts, the United States sustained damages.

## COUNT II
## FALSE CLAIMS ACT (31 U.S.C. § 3729(a)(3))
### Conspiracy

67.     Paragraphs 1 through 61 are realleged as through fully set forth herein.

68.     From at least January 2, 2001 to the present, Defendants knowingly made, used, or caused to be made or used, false records or statements to get a false or fraudulent claim allowed or paid in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

69.     Defendants conspired to defraud the United States by getting a false or fraudulent claim allowed or paid in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

70.     Because of Defendants' acts, the United States sustained damages.

## COUNT III
## UNJUST ENRICHMENT

71.     Paragraphs 1 through 61 are realleged as through fully set forth herein.

72.     Because of Defendants' conduct, they have been unjustly enriched with federal and state monies which in good conscience they should not be allowed to retain.

73.     Defendants have been unjustly enriched to the detriment of the United States and the State of Illinois.

## COUNT IV
## ILLINOIS FALSE CLAIMS ACT (740 ILCS § 175/1)
### False Claims

74.     Paragraphs 1 through 61 are realleged as through fully set forth herein.

75.     From at least January 2, 2001 through the present, the Defendants knowingly

presented, or caused to be presented, to an officer, employee or agent of the State of Illinois false or fraudulent claims for payment or approval in violation of the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq.

76. From at least January 2, 2001 through the present, the Defendants knowingly made, used or caused to be made or used false records and statements to get false or fraudulent claims paid or approved by the State of Illinois in violation of the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq.

77. As used herein, the word "knowingly" means that a person, with respect to information (a) has actual knowledge of the information, (b) acts in deliberate ignorance of the truth or falsity of information, or (c) acts in reckless disregard of the truth or falsity of the information.

78. Because of Defendants' acts, the State of Illinois sustained damages.

**COUNT V**
**ILLINOIS FALSE CLAIMS ACT (740 ILCS § 175/1)**
**Conspiracy to submit false claims**

79. Paragraphs 1 through 61 are realleged as through fully set forth herein.

80. From at least January 2, 2001 to the present, Defendants knowingly made, used, or caused to be made or used, false records or statements to get a false or fraudulent claim allowed or paid in violation of the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq.

81. Defendants conspired to defraud the State of Illinois by getting a false or fraudulent

claim allowed or paid in violation of the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq.

82.     Because of Defendants' acts, the State of Illinois sustained damages.

**COUNT VI**
**PAYMENT UNDER MISTAKE OF FACT**

83.     Paragraphs 1 through 61 are realleged as through fully set forth herein.

84.     This is a claim for the recovery of monies paid by the United States and the State of Illinois to the Defendants as a result of mistaken understandings of fact.

85.     The claims submitted by the Defendants to the United States' and the State of Illinois' agents were paid by the United States and the State of Illinois based upon mistaken or erroneous understandings of material fact.

86.     The United States and the State of Illinois, acting in reasonable reliance on the truthfulness of the claims and the truthfulness of the Defendants' certifications and representations, paid the Defendants certain sums of money to which they were not entitled, and the Defendants are thus liable to account and pay such amounts, which are to be determined at trial, to the United States and the State of Illinois.

**CONCLUSION**

WHEREFORE, Plaintiffs United States of America and State of Illinois demand and pray that judgment be entered in their favor and against Defendants as follows:

1.     Under Counts I and II, for triple damages and civil penalties between $5,000 and $11,000 for each claim, depending on the date of the claim, violating the False Claims Act,[1] plus costs;

---

[1]     Pursuant to the Debt Collection Improvement Act ("DCIA") , Pub. L. 104-134, as of September 29, 1999,

2.      Under Count III, for damages in an amount to be determined at trial, plus interest and costs;

3.      Under Counts IV and V, for triple damages and civil penalties between $5,000 and $11,000 for each claim, depending on the date of the claim, violating the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq.[2], plus costs;

4.      Under Count VI, for damages in an amount to be determined at trial, plus interest and costs;

5.      For a jury trial; and

6.      For all other relief to which the United States and State of Illinois may be entitled.

Respectfully submitted,
JAMES A. LEWIS
United States Attorney

s/Eric I. Long

Dated:    11/9/11

Eric I. Long, IL Bar No. 6243382
Attorney for Plaintiff
United States Attorney's Office
318 South Sixth Street
Springfield, IL 62701
Telephone: 217-492-4450
Fax: 217-492-4888
Email: eric.long@usdoj.gov

---

penalties under the FCA are $5,500 to $11,000. *See* 64 Fed. Reg. 47099, *47103 (1999). For claims submitted after the effective date of the DCIA, the United States requests penalties between $5,500 to $11,000 per false claim submitted.

[2]Pursuant to P.A. 94-1059, as of July 31, 2006, penalties under the Illinois False Claims Act, formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq. are $5,500 to $11,000. For claims submitted after the effective date of P.A. 94-1059, the State of Illinois requests penalties between $5,500 to $11,000 per false claim submitted.

LISA MADIGAN
ATTORNEY GENERAL

Dated:    11/9/11                                    s/ Patricia S. Phillips

_____
Patricia S. Phillips, IL Bar No. 6196590
Assistant Attorney General
P.O. Box 19461
801 S. 7th Street, Suite 200-M
Springfield, Illinois 62794-9461
Telephone: 217-557-2756
Fax: 217-524-6405
Email: tinchpa@isp.state.il.us